Gerald Singleton (SBN 208783)
Brody A. McBride (SBN 270852)
SINGLETON LAW FIRM, APC
115 West Plaza Street
Solana Beach, CA  92075
Tel:   (760) 697-1330
Fax:   (760) 697-1329
Email:   gerald@geraldsingleton.com
         brody@geraldsingleton.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO RODRIGUEZ,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF SAN DIEGO, San Diego Police Officer STEPHEN GUDOY, San Diego Police Officer WILLIAM JOHNSON, San Diego Police Officer ZACH PFANNENSTIEL, and UNKNOWN SUPERVISOR DEFENDANTS,<br><br>　　　　Defendants. | Case No.  '16CV3050 W     JMA<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.　　Plaintiff Eduardo Rodriguez ("Rodriguez") sues defendants City of San Diego ("City") and San Diego Police Department ("SDPD") officers Stephen Gudoy ("Gudoy"), William Johnson ("Johnson"), and Zach Pfannenstiel ("Pfannenstiel") (all three defendant officers together, "Defendant Officers") (the City and the Defendant Officers together, "Defendants") for recovery of damages.

2.　　Plaintiff is entitled to damages because the Defendant Officers violated Plaintiff's constitutional and statutory rights when they unreasonably seized, detained, and arrested Plaintiff after being called to check on Plaintiff's welfare.  Plaintiff had been experiencing psychiatric symptoms but was calm and cooperative when the Defendant

Officers first encountered him. Rather than deescalate the situation, however, the Defendant Officers–in contravention to their training–unreasonably escalated their encounter with Plaintiff, resulting in the use of excessive force on Plaintiff. Indeed, Plaintiff is entitled to damages because, even though Plaintiff did not pose an immediate threat to anyone present, and even though Plaintiff was not attempting to escape, a police dog was unleashed on Plaintiff and allowed to bite him for an unreasonable length of time.

## JURISDICTION & VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, as Plaintiffs assert causes of action arising under 42 U.S.C. § 1983, in addition to California causes of action that arise from the same controversy giving rise to Plaintiffs' section-1983 claims.

4. The Court has personal jurisdiction over all Defendants in this action, as all Defendants are situated or domiciled in the State of California.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this District, as the events giving rise to this action occurred in the Southern District of California.

## PARTIES

6. Plaintiff is an individual domiciled in California.

7. The City is a municipal entity duly organized under California law. The SDPD is the chief law enforcement agency for the City.

8. Gudoy is an individual, believed to be domiciled in California, who–at all times relevant hereto–was working within the course and scope of his employment as an SDPD officer and, therefore, under the color of state law.

9. Johnson is an individual, believed to be domiciled in California, who–at all times relevant hereto–was working within the course and scope of his employment as an SDPD officer and, therefore, under the color of state law.

///

10. Pfannenstiel is an individual, believed to be domiciled in California, who–at all times relevant hereto–was working within the course and scope of his employment as an SDPD officer and, therefore, under the color of state law.

11. The Unknown Supervisor Defendants are currently unknown individuals, believed to be domiciled in California, who–at all times relevant hereto–were responsible for overseeing and supervising the training, performance, and day-to-day duties of the Defendant Officers, including any individual who reviewed and/or approved of the Defendant Officers' conduct during their encounter with Plaintiff on December 3, 2015.

## CALIFORNIA CLAIMS FILING REQUIREMENTS

12. With regard to Plaintiff's state-law causes of action, Plaintiff has complied with California's government tort claims requirements as set forth in California Government Code §§ 900 et seq.

## GENERAL ALLEGATIONS

13. On December 3, 2015, at around 10:30 a.m., Gudoy and Johnson responded to a "5150 call" at Plaintiff's residence in San Diego, California. A "5150 call" refers to California Welfare and Institutions Code section 5150, which gives a police officer authority to take a person, who the officer has probable cause to believe is a danger to himself or others, "into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention."

14. Before they arrived on scene, dispatch had advised Gudoy and Johnson that Plaintiff had experienced a recent, mental-health incident (on November 25, 2015), resulting in Plaintiff receiving a mental-health evaluation.

15. While Plaintiff's wife requested that a Psychiatric Emergency Response Team ("PERT") respond to her and Plaintiff's residence, there was no PERT response.

16. Upon arrival, the Gudoy and Johnson activated their body cameras and were met in the front yard by Plaintiff's wife. She told the officers her husband was last seen in their backyard swinging a stick. Plaintiff's wife let the officers into the house and

COMPLAINT 3

walked them to a sliding-glass door leading to the backyard.

17. As they walked through the house, the officers could see Plaintiff through the sliding-glass door. He was pacing at a moderate rate along the length of the backyard. His facial expression was neutral. Nothing was in his hands.

18. Even though police officers are trained to formulate a plan and wait for appropriate assistance before approaching a potentially aggressive person experiencing psychiatric symptoms, Gudoy and Johnson did not formulate a plan or wait for backup. Instead, they opened the sliding-glass door and engaged Rodriguez. Plaintiff approached the officers in a very calm and non-threatening manner. Gudoy began talking to Plaintiff in a calm voice. Johnson, however, was more aggressive; he began making demands of Plaintiff, even though only one officer should talk during an encounter with someone experiencing psychiatric symptoms.

19. Without reasonable suspicion, probable cause, or consent, Gudoy conducted a pat-down search of Plaintiff for weapons. After completing the pat-down search, Gudoy took out handcuffs, and—without reasonable suspicion or probable cause, and without explaining to Plaintiff what was happening—the officers attempted to handcuff Plaintiff's hands behind his back. The officers did so without formulating a plan and without requesting backup or a PERT response. The officers' actions thus contravened their training not to touch a potentially aggressive individual experiencing psychiatric symptoms until appropriate assistance (e.g., PERT) has arrived on scene. The officers' actions further contravened their training not to touch a potentially aggressive individual experiencing psychiatric symptoms until they have tried talking the individual into voluntary submission.

20. As Gudoy and Johnson attempted to handcuff him, Plaintiff pulled away from the officers. At no point did Plaintiff attempt to hit or strike the officers.

/ / /

/ / /

21. Pfannenstiel arrived on scene with his police dog and other officers. Pfannenstiel told Gudoy and Johnson, who had hold of Plaintiff, to let go of Plaintiff so that he (i.e., Pfannenstiel) could deploy his police dog. While Plaintiff was, at this time, still trying to pull his arms away from Gudoy and Johnson, Plaintiff was not engaged in any assaultive behavior. Rather, Gudoy and Johnson had hold of Plaintiff's left and right arms, respectively.

22. Heeding Pfannenstiel's command, Gudoy and Johnson released Plaintiff's arms, and Pfannenstiel deployed his police dog. The dog, in accordance with SDPD's bite-and-hold policy, bit into and held onto Plaintiff's right leg. Plaintiff fell to the ground. Pfannenstiel allowed the dog to continue biting Plaintiff until the officers handcuffed Plaintiff. While canine officers are supposed to warn suspects that a police dog is going to be deployed, Pfannenstiel did not issue such a warning until after deploying the dog.

23. Once in custody, Plaintiff was charged with violations of California Penal Code section 69 (felony resisting arrest), Penal Code section 245(a) (felony assault with deadly weapon), Penal Code section 148(a)(1) (misdemeanor obstructing/interfering with police officer), and Penal Code section 600(a) (misdemeanor harming police dog).

24. The San Diego County District Attorney's Office filed a criminal complaint, alleging Plaintiff violated Penal Code sections 69, 600(a), and 240/241(c) (misdemeanor assault on police officer).

25. Plaintiff was eventually tried on charges of violating sections 600 and 148(a)(1). A jury acquitted Plaintiff of all charges. Throughout this process, Plaintiff experienced pain and suffering, emotional distress, fear, and humiliation.

/ / /

/ / /

/ / /

## FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 – Unreasonable Seizure & Excessive Force

## (Against Defendant Officers)

26. All preceding paragraphs are incorporated by this reference.

27. The Defendant Officers were, at all times relevant hereto, acting in the course and scope of their employment as SDPD officers and were, therefore, acting under color of state law.

28. The Defendant Officers violated the Fourth Amendment when, on December 3, 2015, they unreasonably escalated their encounter with Plaintiff by, for example, (1) not formulating a plan to interact with Plaintiff even though they knew Plaintiff was experiencing psychiatric symptoms, (2) not calling for appropriate assistance, (3) not waiting to contact Plaintiff, (4) searching Plaintiff without reasonable suspicion and/or probable cause; (5) attempting to restrain Plaintiff without reasonable suspicion and/or probable cause; (6) attempting to restrain Plaintiff without explaining what was happening, and (7) multiple officers making demands of Plaintiff, some in an aggressive tone.  The Defendant Officers then used excessive force on Plaintiff when Gudoy and Johnson released their hold on Plaintiff and Pfannenstiel released his dog, allowing it to bite and hold Plaintiff for an unreasonable length of time.  The Defendant Officers then arrested Plaintiff, charging him with multiple, serious crimes (all of which Plaintiff was ultimately acquitted).

29. As a direct and foreseeable result of the Defendant Officers' actions, Plaintiff suffered general and special damages, including physical pain and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs.

30. The Defendant Officers acted in reckless disregard of Plaintiff's constitutional rights.  Thus, to punish the Defendant Officers' conduct and to deter similar conduct in the future, Plaintiff seeks an award of punitive damages in an amount

to be determined at the time of trial.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 – *Monell*
## (Against City)

31. All preceding paragraphs are incorporated by this reference.

32. The City is liable for the deprivation of Plaintiff's constitutional rights pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which hold that a municipal entity may be held liable for a constitutional injury committed by one of its employees where a municipal policy is the moving force behind the constitutional injury.

33. In this instance, a well-settled custom of SDPD officers unreasonably escalating, and otherwise failing to appropriately handle, encounters with individuals the officers know are experiencing psychiatric symptoms caused Plaintiff's constitutional injuries. Indeed, Plaintiff is aware of, and can identify, other instances when SDPD officers unreasonably escalated, or otherwise failed to appropriately handle, encounters with individuals the officers knew were experiencing psychiatric symptoms.

34. The SDPD's deliberate indifference to its officers' lack of adequate training and supervision in dealing with individuals experiencing psychiatric symptoms further caused Plaintiff's constitutional injuries. The uniformity with which multiple officers failed to comply with their POST and departmental training demonstrates a widespread lack of training.

35. The SDPD's express policy of training and commanding police dogs to bite and hold individuals further caused Plaintiff's constitutional injuries. Plaintiff was not attempting to escape, nor was he assaultive toward any of the Defendant Officers. In fact, Gudoy and Johnson released their hold on Plaintiff to allow the dog to bite Plaintiff. And Pfannenstiel did not call off the dog until after Plaintiff was on the ground, the officers regained their hold on Plaintiff, and Plaintiff was handcuffed. The dog bit and

held Plaintiff for an unreasonable length of time, causing significantly more harm than would have occurred with, for example, a bark-and-hold or bite-and-release policy.

36. The foregoing custom, deliberate indifference, and policy caused Plaintiff to suffer general and special damages, including physical pain and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs. Accordingly, the City is liable for Plaintiff's constitutional injuries.

### THIRD CAUSE OF ACTION

### Battery

### (Against Defendant Officers and City)

37. All preceding paragraphs are incorporated by this reference.

38. On December 3, 2015, the Defendant Officers seized and used excessive force on Plaintiff. Because the Defendant Officers' actions were without legal justification, they were tortious.

39. Plaintiff did not, at any time, consent to the Defendant Officers handcuffing or using any kind of force on him.

40. As a direct and foreseeable result of the Defendant Officers' actions, Plaintiff suffered general and special damages, including physical injury, pain, and suffering, emotional distress, mental anguish, loss of liberty, annoyance, and disturbance.

41. Because the Defendant Officers acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

### FOURTH CAUSE OF ACTION

### Cal. Civ. Code § 52.1 – Bane Act

### (Against Defendant Officers and City)

42. All preceding paragraphs are incorporated by this reference.

43. The Defendant Officers interfered, or attempted to interfere, with Plaintiff's

rights under the United States and California Constitutions to be free from unreasonable seizures and excessive force.

44.   The Defendant Officers committed violence against Plaintiff when the Defendant Officers, in acting aggressively and attempting to illegally restrain Plaintiff, unreasonably escalated a delicate situation, resulting in the Defendant Officers using a significant amount of force on Plaintiff, including allowing a police dog to bite and hold Plaintiff for an unreasonable length of time.

45.   As a direct and foreseeable result of the Defendant Officers' actions, Plaintiff suffered general and special damages, including physical injury, pain, and suffering, emotional distress, mental anguish, loss of liberty, annoyance, and disturbance.

46.   Because the Defendant Officers acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 12132 – Americans with Disabilities Act

### (Against Defendant Officers and City)

47.   All preceding paragraphs are incorporated by this reference.

48.   On December 3, 2015, Plaintiff had a disability as defined in 42 U.S.C. § 12102.  At a minimum, the Defendant Officers perceived Plaintiff as suffering from such a disability.

49.   When Gudoy and Johnson arrived, no one was in danger.  *See Schreiner v. City of Gresham*, 681 F. Supp. 2d 1270, 1279 (D. Oregon 2010) ("[o]nce the area was secure and there was no threat to human safety, the [defendants] would have been under a duty to reasonably accommodate [plaintiffs] disability in handling and transporting him to a mental health facility") (quoting *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000)).  Even though they had time to do so, Gudoy and Johnson did not formulate a plan

before approaching Plaintiff, nor did they call for backup or a PERT response.  After approaching Plaintiff, Gudoy and Johnson quickly and unreasonably escalated their encounter with Plaintiff by touching him and attempting to handcuff him without warning.  Gudoy and Johnson further exacerbated the situation when they released their hold on Plaintiff to allow Pfannenstiel to unleash a police dog on Plaintiff.  If anything, Pfannenstiel and the other officers who responded with Pfannenstiel should have aided Gudoy and Johnson in restraining Plaintiff.  At no point did any of the Defendant Officers attempt to reasonably accommodate Plaintiff.

50. The Defendant Officers acted aggressively toward Plaintiff because of his actual or perceived disability.  That is, the Defendant Officers discriminated against Plaintiff because of Plaintiff's actual or perceived disability.  This unnecessary escalation of an already delicate situation ultimately led to the Defendant Officers' use of repeated and increasing levels of restraint and force.  Title II of the ADA provides that the Defendant Officers had a duty to make reasonable accommodations in dealing with Plaintiff, including, for example, being civil and respectful upon first contact.  *See* 42 U.S.C. § 12182(b)(2)(A).  The Defendant Officers failed to comply with this duty.

51. As a direct and foreseeable result of the Defendant Officers' actions, Plaintiff suffered general and special damages, including physical injury, pain, and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs.

52. Because the Defendant Officers acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

/ / /
/ / /
/ / /

## SIXTH CAUSE OF ACTION

### Cal. Civ. Code §§ 51, 51.7 – Unruh Civil Rights Act

### (Against Defendant Officers and City)

53. All preceding paragraphs are incorporated by this reference.

54. To the extent Plaintiff's rights under the ADA were violated, Plaintiff's rights under California's Unruh Civil Rights Act were also violated. *See* Cal. Civ. Code § 51(f).

55. On December 3, 2015, Plaintiff suffered from a mental disability as defined by California Civil Code section 51(d)(1) and California Government Code section 12926(j). At a minimum, the Defendant Officers perceived Plaintiff as suffering from such a mental disability.

56. The Defendant Officers acted aggressively toward Plaintiff because of his actual or perceived mental disability. This unnecessary escalation of an already delicate situation ultimately led to the Defendant Officers' use of repeated and increasing levels of restraint and force.

57. The Defendant Officers' actions were a substantial factor in causing Plaintiff to suffer general and special damages, including physical pain and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs.

58. Because the Defendant Officers acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

/ / /

/ / /

/ / /

/ / /

## SEVENTH CAUSE OF ACTION

### Negligence

### (Against Defendant Officers and City)

59. All preceding paragraphs, except those falling under the First through Sixth Causes of Action, are incorporated by this reference.

60. The Defendant Officers owed Plaintiff a duty of ordinary care and skill.

61. The Defendant Officers breached this duty when they failed to formulate a plan or call for back-up or a PERT response before approaching Plaintiff, and when they unnecessarily escalated their encounter with Plaintiff by touching Plaintiff and handcuffing him without warning, resulting in the unreasonable seizure and use of excessive force on Plaintiff.

62. As a direct and foreseeable result of the Defendant Officers' actions, Plaintiff suffered general and special damages, including physical pain and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs.

63. Because the Defendant Officers acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## EIGHTH CAUSE OF ACTION

### Negligent Hiring, Retention, Supervision

### (Against Unknown Supervisor Defendants and City)

108. All preceding paragraphs are incorporated by this reference.

109. The Unknown Supervisor Defendants had a duty to ensure the Defendant Officers were fit to perform their respective duties competently and within the bounds of the law.

110. The Defendant Officers were each unfit and/or incompetent to perform their respective duties during their encounter with Plaintiff on December 3, 2015

111. The Defendant Officers' lack of fitness and competence created a particular risk to the public, in that the Defendant Officers:

    a. unreasonably seized and used excessive force on Plaintiff;

    b. used violence on Plaintiff when he attempted to exercise his right to move without being subject to unreasonable seizure and excessive force; and

    c. discriminated against, and failed to accommodate, Plaintiff's disability, because of their perceptions of Plaintiff's disability and mental health.

112. The Unknown Supervisor Defendants should have known, prior this incident, that the Defendant Officers were unfit and/or incompetent to deal with an encounter with an individual experiencing psychiatric symptoms.

113. The Defendant Officers' unfitness and/or incompetence caused Plaintiff to suffer general and special damages, including physical injury, pain, and suffering, emotional distress, mental anguish, loss of liberty, annoyance, disturbance, attorney fees, and other legal costs.

114. Because the Unknown Supervisor Defendants acted in the course and scope of their employment, the City is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## PRAYER FOR RELIEF

WHEREFORE, the foregoing allegations considered, Plaintiff demands:

(1) that judgment be rendered in favor of Plaintiff and against Defendants on all causes of action asserted herein;

(2) compensatory damages as permitted by federal and state law, in amounts to be determined at trial;

(3) punitive damages, against the individual defendants only, as permitted by federal law, and in an amount sufficient to make examples out of these individuals and to

deter such conduct in the future, to be determined at trial;

(4) reasonable attorney fees, expenses, and costs of suit pursuant to 42 U.S.C. §§ 1983-1988, California Civil Code §§ 52.1 et seq., and any other relevant statutory or case law; and

(5) any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand, under the Seventh Amendment, a trial by jury as to each and every cause of action asserted herein.


Dated:  December 16, 2016             SINGLETON LAW FIRM, APC

By:     *s/ Brody McBride*_____

Brody A. McBride, Esq.

Attorneys for Plaintiff